STATE OF NORTH CAROLINA v. DREAMER LEE COTTLE ALSTON

No. 397A90

(Filed 10 January 1991)

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by *Strickland, J.*, at the 2 January 1990 Criminal Session of Superior Court, NEW

STATE v. ALSTON

[328 N.C. 77 (1991)]

HANOVER County. Calendared for argument in the Supreme Court 10 December 1990; determined on the briefs without oral argument pursuant to N.C.R. App. P. 30(d).

Lacy H. Thornburg, Attorney General, by Thomas J. Ziko, Special Deputy Attorney General, for the State.

Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.

Dreamer Lee Cottle Alston, pro se.

PER CURIAM.

Defendant, Dreamer Lee Cottle Alston, was indicted by the New Hanover County grand jury on 28 August 1989 for the murder of Pernell Dewayne Joe. The case was tried noncapitally at the 2 January 1990 Criminal Session of Superior Court, New Hanover County.

The evidence tended to show that Pernell Dewayne Joe died shortly before midnight on 16 August 1989 as a result of a single gunshot wound to the upper chest. Earlier that evening, around 7:00 or 8:00, Joe got into an argument and fist fight with his brother, James William Joe, at the Dove Meadows apartment complex in Wilmington, where Pernell Joe resided with his girlfriend, Dana Aldelette. A group of people tried to break up the fight. Present in the crowd were Aldelette and several of James Joe's friends, including defendant, her husband Mike Alston, and a number of their companions. The fight lasted about ten minutes, and then Pernell went back to his apartment, and his brother James left for a short while.

Subsequently, around 9:00 p.m., defendant and her husband and friends were getting into defendant's car, and Pernell Joe was outside talking with his girlfriend. Mike Alston said something to Joe about the earlier fight to the effect, "[T]hat's why you got your a-- kicked," and Joe became angry and responded. Alston got out of the car, and the two men began fighting on the road in front of the apartment of Amanda Bryan and Dawn James. A large crowd gathered to watch, and the fight continued for fifteen to thirty minutes until police officers arrived to break it up. During the fight, James Joe heard Mike Alston say, "I am going to kill you Pernell." Several witnesses saw defendant run toward Pernell Joe with a forty-ounce beer bottle in her hand, but someone at

the scene stopped her from entering the fight by pushing her off or punching her.

When the fight ended, defendant and three of the girls who were with her got into defendant's white Nissan Sentra to leave. As she walked to the car, defendant said, "I've got something for ya'll. I've got something for ya'll." Defendant drove to her house and went inside briefly, then drove back to Dove Meadows and picked up her husband and Angela Gibson. Afterwards, they all went to the home of Catherine Smith at Garden Lakes Estates, approximately four miles from Dove Meadows. On the way there in the car, defendant was saying things like, "[Y]ou don't f-- with anybody I love because I will f-- you up too . . ." and "I will put a cap in his a-- and the only thing that is going to save him are the cops."

The group arrived at Garden Lakes Estates around 10:00 p.m. and visited for thirty to forty minutes with Catherine Smith on her front porch. Defendant told some of those present that they had just come from a fight at Dove Meadows between her husband and Pernell Joe, that Pernell's "home boys jumped on him [her husband]," that she was not going to have anybody "running over her man," and that she was "going back there and . . . f-- this mother f--er up." Defendant also patted her hip and stated, "I've got five rounds and I am going to unload every one of them in his . . . a--."

Meanwhile, Pernell Joe also was still at Dove Meadows with several friends, who were trying to calm him down. Then Joe and his friends began playing "baseball," with Joe using a boat paddle as a bat. Willie "Spanky" Smith, one of Joe's friends, had picked up a large stick like a closet rod. A while later, defendant returned, driving the white Nissan, with Mike Alston seated next to her and Angela Gibson on the far side of the front passenger seat. Three companions were in the back seat. The evidence was conflicting as to whether Joe was initially inside the apartment or outside the apartment when defendant drove past.

Eight eyewitnesses, including three of the women in defendant's car, two of Joe's friends, Joe's girlfriend, and two bystanders offered somewhat varied accounts of the events that followed. The witnesses generally agreed that, as defendant drove slowly past Joe's apartment, Joe ran alongside or behind the car, carrying the boat paddle over his shoulder. Smith also followed on the other

side, carrying the closet rod. Defendant made a U-turn at the intersection at the end of the street. At that point, Joe was on the driver's side of the car, and Smith was on the other side. A brief conversation occurred between Joe and the occupants of the car, then defendant's hand extended from the window, several (from two to five) shots were fired, and Joe ran back down the street and fell near his apartment.

According to two witnesses, when Joe approached the car, defendant said, "Mother f---er, you got to die," and fired.

As defendant and her companions left Dove Meadows, defendant stated that everyone had been laughing about the fight and that she had given them something to laugh about. Defendant also stated that she had only shot Joe once in the shoulder. She told the passengers in the car "[s]he had been in jail before and she don't care if she goes back again." They also stopped a car occupied by one of Mike Alston's friends, and defendant told him she had just shot somebody.

Officers who responded to the scene found Pernell Joe lying on the ground near his apartment at 218 Virginia Avenue. The boat paddle was lying in the street approximately 171 feet away from the body, and a trail of blood led from that point to where Joe was found. Defendant, her husband, and others were arrested later that night.

At the conclusion of the evidence, defendant's motion to dismiss was denied, and possible verdicts were submitted to the jury of first-degree murder, second-degree murder, and not guilty. The jury found defendant guilty of first-degree murder, as charged. From judgment entered 4 January 1990, imposing a sentence of life imprisonment, defendant appealed.

Upon defendant's application of indigency, the Appellate Defender was assigned to represent defendant on her appeal to this Court. After thorough review of the record and the relevant law and further consultation with fellow counsel, defense counsel stated that she was unable to identify any issue with sufficient merit to support a meaningful argument for relief on appeal. In accordance with *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493 (1967), defense counsel submitted a brief in which she discussed four possible assignments of error "that might arguably support the appeal," *id.* at 744, 18 L. Ed. 2d at 498, and requested this

RECOVERY CENTERS OF AMERICA v. N.C. DEPT. OF HUMAN RESOURCES

[328 N.C. 81 (1991)]

Court to conduct a full examination of the record. Defense counsel submitted a copy of her brief to defendant, with copies of the transcript and record and a letter notifying defendant of her right to submit a brief to this Court on her own behalf in accordance with *Anders*. Defendant subsequently filed a *pro se* brief. We conclude that defense counsel has fully complied with *Anders*.

Upon our thorough review of the transcript, record, briefs of counsel, and defendant's *pro se* brief, this Court finds no error warranting reversal of defendant's conviction or modification of her sentence. In defendant's trial and sentencing, we find

No error.